## AWARD OF CONTRACT FOR A BRIDGE SUPERSTRUCTURE.

Common Pleas Court of Muskingum County.

THE STATE OF OHIO, EX REL ROBERT E. EVANS, v. THE J. A.
SWINGLE CONTRACTING CO., THE BOARD OF COUNTY
COMMISSIONERS OF MUSKINGUM COUNTY, H. A.
BUERHAUS, AUDITOR, AND CHARLES A.
WALKER, TREASURER, OF MUS-
KINGUM COUNTY.*

Decided, September Term, 1913.

*Bridges—Procedure of County Commissioners in Awarding the Con-
tract for a Bridge Superstructure—Construction of Statutory Pro-
visions—Sections 2344, 2345 and 2350.*

1. A bidder for a bridge superstructure is not limited to a bridge of the
exact length specified by the preliminary resolution of the county
commissioners; and the principle of competitive bidding was not
destroyed by the award of the contract, in the case under considera-
tion, to a bidder whose plans provide for a bridge 4.8 feet shorter
than the 751 foot structure called for in the preliminary resolution.
2. The functions of the joint committee, composed of the three county
commissioners, the county auditor and the county surveyor, are
properly exercised when consideration is given to the plans of all
the bidders, including those whose plans differ from the one pro-
posed in the preliminary resolution.

*Affirmed by the Court of Appeals in the following memorandum opin-
ion, filed during the December (1913) term of that court:

"We have investigated the questions presented by counsel on the
hearing of this case, and we have examined the several statutes to
which our attention was specially called, in connection with the record
of the county commissioners in respect to awarding said contract, to-
gether with the opinion of the court below which was submitted by
counsel for the defendants as a part of their argument, and upon such
investigation and examination we are of the opinion that the construc-
tion given said statutes and the conclusion reached by said court, and
the reasons given therefor, are justified both by the law and the facts,
and without going into details, we adopt the able and well considered
opinion of said court as the opinion of this court, and judgment is
therefore awarded the defendants for costs and the plaintiff's petition
will be dismissed."

3. Failure to award a contract on the day the bids were opened does not deprive the commissioners of jurisdiction, but they may adjourn from day to day for further consideration of the plans submitted and for the hearing of engineers and experts thereon before making the award.

4. The discretion of a board of county commissioners must be regarded as fairly exercised, when it appears that the several plans and bids for the work in hand were carefully considered at several different meetings of the board and that outside expert advice was sought in addition to that of a competent county engineer.

*R. J. King* and *S. J. Crew*, for plaintiff.

*Charles F. Ribble*, Prosecuting Attorney, for commissioners.

*E. R. Meyer*, for contractor.

FRAZIER, J.

This cause was submittd to the court on the pleadings, the evidence, the arguments and briefs of counsel. By this action plaintiff seeks to enjoin performance of a contract, entered into between the defendant, the J. A. Swingle Contracting Co., and the board of county commissioners of Muskingum county, for the erection of the superstructure of a bridge at Sixth street, in the city of Zanesville, in place of one that was demolished by the March flood.

The contract for the proposed superstructure was entered into on the 3d day of September, 1913, and provides for a concrete structure with lift span over the canal. The grounds upon which plaintiff bases his claim for relief may be briefly summarized as follows:

1. That the board of county commissioners failed to comply with the statutes governing the procedure in the matter of bridge superstructures, in the following respects:

(a) That the board of commissioners did not determine the length of the bridge, as required by Section 2344, General Code.

(b) That the proposed superstructure does not correspond with the determination of the board of commissioners as to the required length of the bridge.

(c) That the board of commissioners, as a board, never accepted the proposal of said J. A. Swingle Contracting Co. for the said superstructure.

(*d*)   That the board of commissioners did not award the contract at the time and place designated by the statute.

(*e*)   That the board of commissioners considered no other bid but the bid of the said Swingle Contracting Co., and that the public was thereby deprived of the benefits of competitive bidding.

2.   That the proposed structure is not of a suitable design or character.

Section 2344 provides as follows: .

"When it becomes necessary to erect a bridge, the county commissioners shall determine the length and width of the superstructure, whether it shall have single or double track, and advertise for proposals for performing the labor and furnishing the materials necessary to the erection thereof.   In their discretion the commissioners may cause to be prepared plans, descriptions and specifications for such superstructure, which shall be kept on file in the auditor's office for inspection by bidders and persons interested, and invite bids or proposals in accordance therewith."

Section 2345 provides as follows:

"They shall also invite, receive and consider proposals on any other plan at the option of bidders, and shall require that all proposals on such plan shall be accompanied with plans and specifications showing the number of spans, the length of each, the nature, quality and size of the materials to be used, the strength of the structure when completed, and whether there is any patent on the proposed plan, or on any, and if any, on what part thereof."

Under Section 2344, the board must determine the length and the width, etc., of the superstructure.   A fair and just construction of the resolution of the board passed July 28, 1913, shows, in my opinion, that this was done.   The resolution provided for the furnishing of material and labor for the reconstruction and rebuilding of the superstructure of the Sixth street bridge across the Muskingum river, in Zanesville, Ohio, to replace the bridge recently destroyed by the flood.   It provided that the superstructure should consist either:

(*a*)   Of four spans, each 150 feet in length, one span 76 feet long, and one lift span 75 feet long; or

(*b*)    Of a series of reinforced concrete arches with supports from the same material, together with a lift span 75 feet long erected of the same material, on foundations to be provided by the county commissioners.

All bidders to submit plans under two separate plans as follows:

1.    Said bridge to have a roadway 32 feet in the clear, to provide for a single street car track, and to have a sidewalk on each side 6 feet wide, said roadway to be provided with treated block floor, sidewalks to be concrete, said bridge to carry loads as specified for class A, city bridges in Cooper's latest specifications, 1909.

2.    Bridge same dimensions as above except said roadway to be 40 feet in width in the clear, to provide for a double track, and sufficient strength to carry loads above specified.

This resolution clearly fixes the width of the bridge to be 32 feet in the clear, with a single street car track and sidewalks on each side 6 feet wide, and also provides for a bridge of the width of 40 feet in the clear, to be of the same dimensions as above provided. The phrase "dimensions above provided" had reference to the length of the bridge. There were to be four spans, each 150 feet in length, with one span 76 feet long and one lift span 75 feet long. These lengths added together make 751 feet. Applying the legal maxim, "*Id certum est quod certum redendum est,*" the length of the bridge is determined to be 751 feet and the width to be either 32 feet with sidewalks, or 40 feet, at the option of the commissioners, when plans were submitted. In my judgment, Section 2345 does not require, when bidders submit their own plans, that they must be so worked out that the plan submitted will be of the exact length determined by the board in its resolution.

The argument is advanced in the briefs of plaintiff's counsel that, unless all plans be confined to the length so determined, then there can be no competitive bidding. The Legislature has wisely provided that bidders may offer their own plans, and that the board shall accept from the entire number submitted the plan it deems best, considering price, plan, material, and method of construction. Price is not the sole thing to be considered.

Other elements enter in, viz., plan, material, and method of construction. A wide discretion is here given to the board of commissioners. A comparison of the plan selected with plaintiff's plan of bridge shows a difference of only 4.8 feet, when the clear length of the bridge is considered, excluding from both the length of the lift span, and both bids provide for exactly the same kind of lift span.

Section 2345 provides:

"When the bidder submits his own plan, it shall show the number of spans, the length of each, the nature, quality and size of the materials to be used, and the strength of the structure when completed."

This, it seems to me, plainly means that the bidder is not limited to the exact length of the bridge as determined by the board in its preliminary resolution.

Plaintiff complains that the board of commissioners never accepted the plan and proposal of said J. A. Swingle Contracting Co. This contention is based on the fact that when the joint committee, composed of the three members of the board of commissioners, the auditor and the county engineer, considered the plans submitted by the bidders, two of the commissioners voted against the acceptance of the Swingle plan and proposal. Section 2350 provides:

"If the plans, drawings   *   *   *   relate to the building of a bridge, they shall be submitted to the commissioners, county auditor, and county surveyor. If approved by a majority of them, a copy thereof shall be deposited with the county auditor and kept for the inspection of parties interested."

Acting as a joint board or committee under this section, on September 3, 1913, the auditor, Mr. Buerhaus, the county engineer, Mr. Strait, and Mr. Herdman of the board of commissioners, after due consideration of all the plans submitted (and they were numerous), voted to accept the plans of the Swingle Contracting Co. The other two commissioners, Mr. Cochran and Mr. Howell, voted against the acceptance. Section 2350 is mandatory, but it relates to plans, specifications, estimates, etc. It is claimed by counsel for plaintiff that the functions of this joint committee, composed of the auditor, the civil engineer,

and the board of commissioners, come into exercise only when the commissioners have definite plans, etc., prepared for all bidders in the first instance, and that this joint committee has nothing to do with plans, etc., submitted by the bidders. There is certainly a great deal more reason why bidder's plans. etc., are to be examined and approved by such joint board or committee than when preliminary plans are prepared for bidders; but even though the action of such joint board is unnecessary in the case of plans, etc., submitted by bidders, the records of the commissioners show that the board of commissioners, by its resolution of September 11th, approved the plan and accepted the proposal of and awarded the contract to the Swingle Contracting Co. The argument of counsel for the plaintiff carried to its logical conclusion would deprive the commissioners of the independent and salutary advice not only of the auditor and the county engineer but of the right to consult anybody as to such plans. So it merely comes to this: if the action of such joint board or committee is essential, such action was had; if not essential, then such action is a mere nullity and the final action of the board of commissioners must prevail.

The plaintiff further claims that the contract was not awarded at the time and place designated by the statute. Section 2346 provides as follows:

"In their advertisement the commissioners shall invite bidders to make proposals for furnishing all the materials and performing all the work, or for such parts thereof as bidders may deem proper, and state the time when and the place where bids will be opened and contract awarded. At such time and place or at a time to which they shall publicly adjourn the consideration thereof, they shall publicly open, read, and examine the proposals made, and award the contract for furnishing the material for the erection of such superstructure to the person or persons giving security as required by the provisions of this chapter who is the lowest or best bidder or bidders, considering price, plan, material and method of construction."

No complaint is made of the advertisement or of its sufficiency. The advertisement provided that bids should be submitted on August 26, 1913. A large number of bidders submitted plans with bids. On the 26th day of August, the day when according

to the advertisement bids were to be opened, bids were opened, and the journal of the commissioners shows the following resolution:

"R. C. Cochran moved and E. V. Howell seconded the motion that as Professor C. E. Sherman has designated Professor C. T. Morris to represent him in regard to the Sixth street bridge, the foregoing proposals be referred to Professor C. T. Morris for consideration. The roll being called on this motion resulted as follows: Cochran yea, Herdman yea, Howell yea; motion carried."

The journal shows that the commissioners thereafter adjourned from day to day until September 3d. At this time, they had the report of their expert, Prof. C. T. Morris, on the various plans that were submitted by the bidders. The report furnished the commissioners by engineer Morris in substance states, that careful estimates have been made of the cost of the various plans, that all the bids were carefully compared and considered, and that the two lowest bids were those of Daniel B. Luten, but the report says:

"The Luten plans are in some respect indefinite and would have to be supplemented by detail drawings. The objection to the Luten bids lie in the specifications, which are not complete.
"The next lowest bid is that of R. H. Evans & Co. upon plan prepared by Edwin Thatcher. These plans need supplementing with additional detail drawings. The specifications, however, are clear and complete in every respect, except that they also specify the city of Zanesville specifications for wood block pavement. This design has one more pier in the river than the other plan, but this disadvantage is to some extent offset by the greater area of clear water way.
"The next bid, that of the J. A. Swingle Contracting Co. (the bid accepted by the commissioners), has an excellent plan, and while it does not provide quite as much area of water way, it has longer spans and therefore fewer piers in the river. These plans and specifications are well made and satisfactory in every respect."

He further says that the plan and price submitted by the Fritz, Roomer, Cooke, Grant Co. is so high that consideration of the plan could not be recommended; that the plans of Mr. Scully are well gotten up, and if a steel bridge is desired, would no doubt meet the requirements of the location.

The joint board or committee, composed of the commissioners, the auditor, and the county engineer, proceeded to canvass the various plans and to ballot on them, with the result that the joint board adopted the Swingle plan, but the contract was not awarded on that day. According to their journal, the board adjourned to the next day, September 4th, when the journal shows the following:

"In the matter of the Sixth street bridge superstructure, the board considered the plans and specifications adopted for the superstructure of the Sixth street bridge, but not being prepared to vote on the awarding of the contract, postponed. the matter until the following day, September 5, 1913."

The journal of the commissioners then shows that the commissioners met and adjourned each day thereafter, except Sundays, and on the 11th day of September, the board, by a formal resolution, accepted the proposal of and entered into a contract with the Swingle Contracting Co.

The claim of plaintiff's counsel is that, inasmuch as the record does not show that on the 26th day of August, when the bids were opened, an adjournment was made to a specific future date, the board thereby lost jurisdiction to further entertain the proceeding as to said superstructure. It is true that the contract was not awarded on the 26th day of August, the day the bids were opened. The statute, however, is to be given a reasonable construction and to be construed in connection with Section 2355, which provides:

"If they [the commissioners] fail to make a contract, as herein provided, on the day named in the notice, the commissioners may continue from day to day until it is made."

Even in the absence of such a statute as Section 2355, it is difficult to see what harm or prejudice could in any way come to anybody by the procedure followed by the board. The board could not definitely know how long their expert, Mr. Morris, would be engaged in considering the various plans and making his report to them. All bids had been publicly opened and read and the whole turned over to a competent engineer for his analysis and report. The plaintiff himself was a bidder and, so far as the record shows, he made no protest to this procedure

and made no demand in that behalf. I am of the opinion that by its method of procedure the board did not lose jurisdiction of the right to award a contract and that the board had the legal right to award a contract when it assumed so to do.

It is claimed by the counsel for the plaintiff that Section 2355 does not apply when bids are submitted by bidders as provided in Section 2345. By reason of chopping the original law into sections for our Revised Statutes, the matter has become somewhat confused. Section 799, found in Vol. 85 O. L., p. 221, reads as follows:

"It is competent for the commissioners, if they fail to make the contract or contracts as herein provided for, on the day named in the notice, to continue from day to day until such contract or contracts be made."

The previous paragraphs show that the Legislature had in mind both kinds of contracts, not only those awarded upon plans submitted by the commissioners, but likewise where plans were submitted by the bidders, and the law as originally passed is much clearer on this point than it is in our General Code.

It is further contended by the plaintiff that the board considered only one plan and that, therefore, the right to competitive bidding was thereby defeated. This contention is not sustained by the proofs. The evidence shows that the plans, bids and estimates, were submitted to a competent engineer for his inspection and report. The engineer so selected was recommended by Prof. Sherman of the State Univeersity, one of the most competent engineers in the country. Mr. Morris, the engineer selected by him, furnished the commissioners a carefully wrought out, detailed report, showing a comparison of the different plans submitted and their respective values. Of the plan finally selected (that of the J. A. Swingle Contracting Co.), he says in his report:

"The plan and specifications are well made and satisfactory in every respect."

The record shows that Mr. Strait, our own county engineer (skilled in his profession), finally approved the plan proposed by the Swingle Contracting Co., which plan the board finally adopted. The plan of bridge submitted by the plaintiff was

given careful consideration. The report of the engineer above referred to shows this. Mr. Morris' report on the various plans submitted was before the board and received careful considera- tion. The resolution awarding the contract is conclusive as to this, and states:

"Whereas, in pursuance to the advertisement inviting pro- posals for furnishing of materials and performing of work for the building of a superstructure for the Sixth street bridge, in Zanesville, Ohio, certain plans, specifications, drawings, bills of material, and estimates were submitted by various contractors to the commissioners, together with bids and proposals for building the same." *    *    *

The plaintiff claims further that the proposed plan and de- sign accepted by the commissioners is not a suitable one for the place at which it is to be erected. It is not the office of the court to devise plans for public structures. This subject is relegated to various officers and boards, and such officers and boards must exercise their judgment and discretion and deter- mine the plan. It is a principle of law that the courts will never intervene where a discretion to be exercised is reposed in another, unless it is shown that there is a gross abuse of such discretion. It may be that no two boards of commissioners would agree as to which of the plans submitted is the better, all things considered, but it certainly does appear here that in this instance the board proceeded carefully, took competent and independent advice from an unbiased engineer, and like- wise had the benefit of the counsel of Mr. Strait, the county engineer. Under all the evidence, the discretion of the board seems to have been fairly and reasonably exercised, and their judgment was finally recorded in their resolution, awarding the contract to the Swingle Contracting Co. Under the evi- dence here submitted, there is not the slightest suspicion or in- dication of any favoritism or untoward dealing in this matter. Every bidder had his day in court, and his plan, bid, and method of construction were carefully considered.

For these reasons, the finding of the court is in favor of the defendants and the petition will be ordered dismissed at the plaintiff's costs. Notice of appeal and bond in appeal $500.